UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

Michelle Foster-Sinkfield, Paul Sinkfield,

And M.F., a minor,                                            Case No.

    Plaintiffs,


v.

City of Pensacola;
Pensacola Police Department;
Chief Kristin Brown;
Keith M. Tourney;
Kyle Skipper;
Brandon Williams;
Johnathan Cramer;
Alex Bartholomew; and
Miya Iversen


    Defendants.


## COMPLAINT

Plaintiffs Paul Sinkfield, Michelle Sinkfield, and minor child M.F., through her legal guardians, Mr. and Ms. Sinkfield bring this Complaint against the City of Pensacola, the Pensacola Police Department, Chief Kristin Brown and Pensacola Police Department officers Tourney, Skipper, Williams, Cramer, Bartholomew, and Iversen. These allegations concern an incident that occurred on January 12, 2024, in which the defendant officers used excessive and unnecessary force against Paul and Michelle Sinkfield and M.F. Plaintiffs allege:

**PARTIES**

1. At all times relevant to this action, Plaintiff Michelle Sinkfield "Mrs. Sinkfield" is a United States citizen and a resident of Pensacola, Florida.

2. At all times relevant to this action, Plaintiff Paul Sinkfield "Mr. Sinkfield," is a United States citizen and a resident of Pensacola, Florida.

3. Paul and Michelle Sinkfield, are the grandparents and legal guardians of M.F., a minor 13 year old child who is a United States citizen and resident of Pensacola, Florida.[1]

4. Mr. and Mrs. Sinkfield and M.F. may collectively be referred to as "Sinkfield Plaintiffs" throughout this Complaint but each brings individual claims.

5. Defendant City of Pensacola is a municipal corporation organized under the laws of the State of Florida with its principal place of business at 222 West Main Street, Pensacola, Florida 32502.

6. The Defendant Pensacola Police Department is the primary law enforcement agency and is a department of the City of Pensacola, Florida with its principal place of business is at 711 North Hayne Street.

7. Defendant Kristin Brown is the Chief of Police for the Pensacola Police Department who, at all relevant times, was acting under color of state law and within the course and scope of employment. Defendant Brown is being sued in her official capacity.

8. Defendant Keith Tourney is a United States citizen, upon information and belief a resident of Pensacola, Florida or the Northern District of Florida and at all times relevant herein was a police officer employed by the Pensacola Police Department and is a

---

[1] Counsel will be filing a Motion to Proceed using Pseudonyms.

"person" subject to suit under § 42 U.S.C. 1983. Defendant Tourney is being sued in his individual and/or official capacity as described more specifically herein.

9. Defendant Kyle Skipper is a United States citizen, upon information and belief a resident of Pensacola, Florida or the Northern District of Florida and at all times relevant herein was a police officer employed by the Pensacola Police Department and is a "person" subject to suit under § 42 U.S.C. 1983. Defendant Skipper is being sued in his individual and/or official capacity as described more specifically herein.

10. Defendant Brandon Williams is a United States citizen, upon information and belief a resident of Pensacola, Florida and at all times relevant herein was a police officer employed by the Pensacola Police Department and is a "person" subject to suit under § 42 U.S.C. 1983. Defendant Williams is being sued in his individual and/or official capacity as described more specifically herein.

11. Defendant Johnathan Cramer is a United States citizen, upon information and belief a resident of Pensacola, Florida and at all times relevant herein was a police officer employed by the Pensacola Police Department and is a "person" subject to suit under § 42 U.S.C. 1983. Defendant Cramer is being sued in his individual and/or official capacity as described more specifically herein.

12. Defendant Alex Bartholomew is a United States citizen, upon information and belief a resident of Pensacola, Florida and at all times relevant herein was a police officer employed by the Pensacola Police Department and is a "person" subject to suit under § 42 U.S.C. 1983. Defendant Bartholomew is being sued in his individual and/or official capacity as described more specifically herein.

13. Defendant Miya Iversen is a United States citizen, upon information and belief a resident of Pensacola, Florida and at all times relevant herein was a police officer employed by the Pensacola Police Department and is a "person" subject to suit under § 42 U.S.C. 1983. Defendant Iversen is being sued in his individual and/or official capacity as described more specifically herein.

14. Defendants John Doe 1, 2, and 3 are United States citizens, residents of Pensacola, Florida or the Northern District of Florida and at all times relevant herein were police officers employed by the Pensacola Police Department and are "persons" subject to suit under § 42 U.S.C. 1983. Defendants John Does 1-3 are being sued in their individual and official capacities.

15. Defendants Tourney, Skipper, Cramer, Bartholomew, and John Does 1-3, may collectively be referred to as "Police Officer Defendants."

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction over this action pursuant to 28 USCS § 1331 and 28 USCS § 1343, because this action arises under the Constitution and laws of the United States, specifically the Fourth Amendment and Fourteenth Amendments to the United States Constitution.

17. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over the state law claims, since these claims are so related to the claims in the §1983 action that they form part of the same case and controversy.

18. This Court is the proper venue for this case pursuant to 28 USCS § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in Pensacola, Florida, which is within the Northern District of Florida.

19. A notice of claim pertaining to this matter was filed with the City of Pensacola on March 17, 2024 pursuant to FL Statute § 768.28. Attachment A.

20. This is an action for money damages brought pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States, and under the common law of the State of Florida.

## FACTUAL BACKGROUND

21. On January 12, 2024 on or about 6PM, officers with the Pensacola Police Department, including Defendants Skipper, Tourney, Williams, Cramer, Bartholomew, Iversen, and John Doe 1-3, arrived at 340 North G Street, Pensacola, FL, - the Sinkfield Plaintiffs' residence.

22. Defendant Tourney knocked on and rang the front door.

23. Defendant Skipper and John Doe (either 1-3) were also on the front porch while other PPD officers, including Defendants Williams, Cramer, Iversen, and/or John Doe 1-3 waited around the residence.

24. Plaintiff Paul Sinkfield answered the door, stepped outside, and closed the door.

25. Defendant Skipper, and other PPD Officer, had a gun pointed at Mr. Sinkfield.

26. Mr. Sinkfield was 58 years old at the time and was unarmed.

27. Defendant Tourney told Mr. Sinkfield to "get Mikhail outside," and claimed to have a warrant for Mikhail.

28. Mikhail Fountain is the adult son of Plaintiffs Michelle and Paul Sinkfield.

29. Mr. Fountain does not live at 340 G Street.

30. Upon information and belief, the warrant PPD officers had was not for the Sinkfield Plaintiffs' residence.

31. Mr. Sinkfield asked officers why they were there and asked to see the warrant the police claimed to have.

32. Mr. Sinkfield asked officers to see the alleged warrant on at least five different occasions.

33. Defendants Tourney and Skipper refused to explain the police presence to Mr. Sinkfield and would not display the warrant.

34. Instead, Defendant Tourney aggressively demanded that Mikhail exit the house and threatened to forcibly break down the front door to retrieve him.

35. Mr. Sinkfield continued to request to see the warrant.

36. Once the door opened, Mr. Sinkfield stepped inside of the door and as it closed Defendant Tourney rammed it open.

37. Defendant Tourney pushed the door into Mrs. Sinkfield.

38. The Police Officer Defendants, many of whom were armed, then entered the home.

39. Police Officer Defendants assaulted Mrs. Sinkfield to wit:[2]

    a.   Pointing firearms at Mrs. Sinkfield;

    b.   Pushing Mrs. Sinkfield;

    c.   Grabbing Mrs. Sinkfield;

    d.   Knocking Mrs. Sinkfield to the ground; and

    e.   Kneeling on Mrs. Sinkfield's body.

40. Police Officer Defendants assaulted Mr. Sinkfield to wit:

    a.   Pointing firearms at Mr. Sinkfield;

    b.   Pushing Mr. Sinkfield;

    c.   Pushing Mr. Sinkfield against the wall;

    d.   Grabbing Mr. Sinkfield's neck;

---

[2] This is not an exhaustive list and this list includes the below actions but is not limited to that.

e.  Grabbing Mr. Sinkfield;

f.  Defendant Skipper punching Mr. Sinkfield in the head;

g.  Tackling Mr. Sinkfield to the ground;

h.  Kneeling on Mr. Sinkfield's body while he was on the ground;

i.  Assaulting Mr. Sinkfield while he was on the ground;

j.  Arresting Mr. Sinkfield.

41. Mr. Sinkfield continued to say "I ain't doing nothing" while he was being assaulted and arrested.

42. Mr. Sinkfield was arrested for Accessory After the Fact 3rd Degree and Battery on an Officer.

43. Mrs. Sinkfield continued to ask why this was all happening while she was being assaulted.

44. Both Mr. and Mrs. Sinkfield alerted officers that their grandchild was in the back room.

45. Two of the Police Officer Defendants pointed a semi automatic firearm directly at M.F.

46. After this horrific scene, officers successfully apprehended Mr. Fountain, who was placed in handcuffs and secured in a police vehicle.

47. Defendant Tourney then told Police Officer Defendants, that he "wanted her" [referring to wanting officers to arrest Mrs. Sinkfield].

48. Police Officer Defendants then came back to the residence door falsely claiming that Mr. Fountain wanted to speak with Mrs. Sinkfield and stating that she could come outside if she wanted to speak with him.

49. Mrs. Sinkfield exercised her right to stay inside of her home.

50. When Mrs. Sinkfield did not come out of her home Police Officer Defendants violently arrested Mrs. Sinkfield, to wit:

   a.  Opening and rushing into the door;

   b.  Tackling Mrs. Sinkfield to the ground;

   c.  Grabbing Mrs. Sinkfield;

   d.  Bending Mrs. Sinkfield's arms behind her back; and

   e.  Placing their body on Mrs. Sinkfield's body.

51. Mrs. Sinkfield was arrested for Accessory After the Fact 3rd Degree and Obstruction Two.

52. Mrs. Sinkfield was in such shock from being assaulted that she defecated on herself.

53. At all times throughout this incident all of the Sinkfield Plaintiffs were unarmed.

54. Mr. Sinkfield's case was outright dismissed by the State of Florida.

55. Mrs. Sinkfield's case was dismissed by the State of Florida.

56. As a direct and proximate result of the Defendants' conduct, the Sinkfield Plaintiffs suffered bodily injury and resulting pain and suffering, disability, disfigurement, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and aggravation of previously existing medical conditions: these losses are permanent or continuing in the Sinkfield Plaintiffs will suffer said losses in the future.

57. As a direct and proximate result of the Defendants' conduct, the Sinkfield Plaintiffs have also suffered  severe emotional distress, including but not limited to anxiety, fear, nightmares, and post-traumatic stress.

### CLAIMS FOR RELIEF

**Count I: 42 U.S.C. §1983 Excessive Force**
**(Against the the Police Officer Defendants in their Individual Capacities)**

58. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 59 as if fully set forth herein.

59. The Police Officer Defendants acted under color of state law and were acting in their official capacities as police officers employed by the Pensacola Police Department when they brutally assaulted the Sinkfield Plaintiffs.

60. The Police Officer Defendants' conduct deprived the Sinkfield Plaintiffs of their 4th and Amendment right to be free from unreasonable seizures by using excessive force against them, to wit:

    a. Pushing Mr. and Sinkfield;

    b. Pushing both Mr. and Sinkfield to the ground;

    c. Grabbing Mr. and Mrs. Sinkfield;

    d. Punching Mr. Sinkfield in the head;

    e. Knocking Mr. and Sinkfield to the ground;

    f. Pointing a firearm at the Sinkfield Plaintiffs including a minor child;

    g. Knelling on Mr. and Mrs. Sinkfield's body; and

    h. Arresting Mr. and Mrs. Sinkfield without the requisite probable cause.

61. Police Officer Defendants arrested Mr. and Mrs. Sinkfield for absolutely no reason and without probable cause.

62. At the time the Police Officer Defendants pointed their firearms at the Sinkfield Plaintiffs, they posed no threat to the officers or anyone else.

63. The Police Officer Defendants use of force was objectively unreasonable under the circumstances.

64. No force, much less the level of force used, was authorized or necessary to be used against the Sinkfield Plaintiffs regardless of the sufficiency of their arrest.

65. Even if the Court finds that the arrest was supported by probable cause, the Police Officer Defendants' conduct was unconstitutional and excessive.

66. The 14th amendment prohibits the unreasonable use of force by a law enforcement officer when making an arrest even if that law enforcement officer has the lawful authority to seize an individual.

67. The use of force by Police Officer Defendants was blatantly excessive and deprived the Sinkfield Plaintiffs of their 14th amendment right to be free from force which was unreasonable under the circumstances.

68. The Police Officer Defendants' conduct was deliberately indifferent to the Sinkfield Plaintiffs' clearly established rights.

69. As a direct, proximate, and foreseeable result of the acts and omissions of the Police Officer Defendants' as alleged above, the Sinkfield Plaintiffs suffered mental anguish, damage to their reputation, mental anguish, damage to his reputation, fear, humiliation, distress, pain and suffering, mental anguish, loss of enjoyment of life, expenses of medical care and treatment, lost wages, and diminished future earning capacity. These injuries and losses are permanent and continuing and the Sinkfield Plaintiffs will suffer such losses in the future.

70. As a direct and proximate result of the Police Officer Defendants' actions, the Sinkfield Plaintiffs have suffered damages, including but not limited to emotional distress, psychological trauma, and pain and suffering, physical and mental health injuries, financial and emotional damages.

**Count II: 42 U.S.C. 1983 : Illegal Detention, Seizure, and Arrest**
**(Against the the Police Officer Defendants in their Individual Capacities)**

71. The Sinkfield Plaintiffs realleges and incorporates all of the allegations contained above in paragraphs 1 through 70 as if fully restated herein.

72. Police Officer Defendants unreasonably seized or detained Mr. and Mrs. Sinkfield in violation of the Sinkfield Plaintiffs' Fourth and Fourteenth Amendment rights when they entered their home, assaulted and arrested them.

73. At the time Mr. and Mrs. Sinkfield was seized and arrested Police Officer Defendants did not have arguable probable cause, probable cause, or a reasonable suspicion that a crime was being committed or about to be committed.

74. Police Officer Defendants seized and arrested Mr. and Mrs. Sinkfield while acting under color of state law.

75. Police Officer Defendants' seizure and arrest of Mr. and Mrs. Sinkfield was unreasonable.

76. Police Officer Defendants' actions were deliberately indifferent to the rights of Mr. and Mrs. Sinkfield.

77. Police Officer Defendants' actions violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

78. As a consequence of Police Officer Defendants' actions, the Sinkfield Plaintiffs suffered violations of the Fourth Amendment to the U.S. Constitution, which prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Pursuant to the

incorporation doctrine, the due process clause of the Fourteenth Amendment makes the Fourth Amendment applicable to local governments.

79. No objectively reasonable officer in the Police Officer Defendants' situation could believe there was even arguable probable cause to seize, detain or arrest the Sinkfield Plaintiffs such that Defendant is not entitled to qualified immunity for his actions.

80. As a direct, proximate, and foreseeable result of the acts and omissions of the Police Officer Defendants' as alleged above,  the Sinkfield Plaintiffs suffered mental anguish, damage to their reputation, mental anguish, damage to his reputation, fear, humiliation, distress, pain and suffering, mental anguish, loss of enjoyment of life, expenses of medical care and treatment, lost wages, and diminished future earning capacity. These injuries and losses are permanent and continuing and  the Sinkfield Plaintiffs will suffer such losses in the future.

81. As a direct and proximate result of the Police Officer Defendants'' actions,  the Sinkfield Plaintiffs have suffered damages, including but not limited to emotional distress, psychological trauma, and pain and suffering, physical and mental health injuries, financial and emotional damages.

### III. Municipal Liability under 42 U.S.C. § 1983 (Monell Claim)
### (Against the City of Pensacola)

82. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 83 as if fully set forth herein.

83. The City of Pensacola, through the Pensacola Police Department, has a pattern, practice, or custom of using excessive force during arrests, particularly against minors and family members who pose no threat.

84. The City of Pensacola, through the Pensacola Police Department, has a pattern, practice, or custom of going into homes without a warrant and arresting people without cause as they did for Mrs. Sinkfield.

85. The City of Pensacola, through the Pensacola Police Department, has a pattern, practice, or custom of arresting people without cause.

86. The City of Pensacola has failed to properly train, supervise, and discipline its officers regarding the appropriate use of force, particularly with respect to pointing firearms at individuals who pose no threat, the proper protocols about executing an arrest, the constitutional laws regarding entry of a home for a warrantless arrest (Mrs. Sinkfield), and the proper basis to arrest someone forThe City of Pensacola's failures in training, supervision, and discipline directly led to constitutional violations. Specifically, officers were inadequately prepared regarding:

   a. The appropriate use of force, particularly the pointing of firearms at non-threatening individuals;

   b. Proper protocols for executing an arrest;

   c. The constitutional laws governing warrantless entry into a home for an arrest (e.g., Mrs. Sinkfield); and

   d. The proper legal basis for making an arrest..

87. The City of Pensacola was deliberately indifferent to the constitutional rights of its citizens, including the Sinkfield Plaintiffs.

88. The City of Pensacola's policies, practices, customs, and/or failure to train, supervise, and discipline its officers were the moving force behind the constitutional violations suffered by the Sinkfield Plaintiffs.

89. The fact that multiple officers participated in assaulting and pointing firearms at the Sinkfield Plaintiffs, including a minor, and that supervisory officers failed to intervene, demonstrates that this conduct was consistent with the policies, practices, or customs of the Pensacola Police Department.

90. As a direct, proximate, and foreseeable result of the acts and omissions of the City of Pensacola as alleged above, the Sinkfield Plaintiffs suffered mental anguish, damage to their reputation, mental anguish, damage to his reputation, fear, humiliation, distress, pain and suffering, mental anguish, loss of enjoyment of life, expenses of medical care and treatment, lost wages, and diminished future earning capacity. These injuries and losses are permanent and continuing and the Sinkfield Plaintiffs will suffer such losses in the future.

91. As a direct and proximate result of the above mentioned Defendants' actions, the Sinkfield Plaintiffs have suffered damages, including but not limited to emotional distress, psychological trauma, and pain and suffering, physical and mental health injuries, financial and emotional damages.

### Count III: Failure to Intervene
### (Against the Police Officer Defendants)

92. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 91 as if fully set forth herein.

93. Upon information and belief, one or more of the Police Officer Defendants are supervisors and were present at the scene during the incident, including Defendant Brandon Williams who is a Sergeant.

94. The supervisors, including Defendant Williams, witnessed the non-supervisor Police Officer Defendants using excessive force against the Sinkfield Plaintiffs by pointing

firearms at them, including pointing a gun at a minor's head, grabbing Mr. and Mrs. Sinkfield, punching Mr. Sinkfield in the head, throwing Mr. and Mrs. Sinkfield to the ground after the target of the arrest warrant had already been apprehended.

95. The supervisor Police Officer Defendants had a duty to intervene to prevent the violation of the Sinkfield Plaintiffs' constitutional rights.

96. The supervisor Police Officer Defendants including Defendant Williams, had a reasonable opportunity to intervene to prevent the Individual Defendants from using excessive force against the Sinkfield Plaintiffs.

97. The supervisor Police Officer Defendants including Defendant Williams, failed to take reasonable steps to intervene and prevent the Individual Defendants from using excessive force against the Sinkfield Plaintiffs.

98. As a direct, proximate, and foreseeable result of the acts and omissions of the supervisor Police Officer Defendants as alleged above, the Sinkfield Plaintiffs suffered mental anguish, damage to their reputation, mental anguish, damage to his reputation, fear, humiliation, distress, pain and suffering, mental anguish, loss of enjoyment of life, expenses of medical care and treatment, lost wages, and diminished future earning capacity. These injuries and losses are permanent and continuing and  the Sinkfield Plaintiffs will suffer such losses in the future.

99. As a direct and proximate result of the above mentioned supervisor Police Officer Defendants actions,  the Sinkfield Plaintiffs have suffered damages, including but not limited to emotional distress, psychological trauma, and pain and suffering, physical and mental health injuries, financial and emotional damages.

**Count IV: Battery**
**(Against the Police Officer Defendants)**

100. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 99 as if fully set forth herein.

101. The Police Officer Defendants intentionally and unlawfully threatened the Sinkfield Plaintiffs with unnecessary and excessive violence.

102. The Individual Defendants pointed their firearms at the Sinkfield Plaintiffs, including pointing a gun directly at a minor child, constituting a threat of violence.

103. The Police Officer Defendants had the apparent ability to carry out this threat of violence, as they were armed law enforcement officers.

104. The Police Officer Defendants' actions created in Plaintiffs a well-founded fear that violence was imminent.

105. As a direct, proximate, and foreseeable result of the acts and omissions of the Police Officer Defendants' as alleged above,  the Sinkfield Plaintiffs suffered mental anguish, damage to their reputation, mental anguish, damage to his reputation, fear, humiliation, distress, pain and suffering, mental anguish, loss of enjoyment of life, expenses of medical care and treatment, lost wages, and diminished future earning capacity. These injuries and losses are permanent and continuing and  the Sinkfield Plaintiffs will suffer such losses in the future.

106. As a direct and proximate result of the Police Officer Defendants'' actions,  the Sinkfield Plaintiffs have suffered damages, including but not limited to emotional distress, psychological trauma, and pain and suffering, physical and mental health injuries, financial and emotional damages.

**Count V: Intentional Infliction of Emotional Distress**
**(Against the Police Officer Defendants in their Individual Capacity)**

107. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 106 as if fully set forth herein.

108. The Police Officer Defendants engaged in extreme and outrageous conduct when they physically and violently assaulted the Sinkfield Plaintiffs to wit:

   a. Pushing Mr. and Sinkfield;

   b. Pushing both Mr. and Sinkfield to the ground;

   c. Grabbing Mr. and Mrs. Sinkfield;

   d. Punching Mr. Sinkfield in the head;

   e. Knocking Mr. and Sinkfield to the ground;

   f. Pointing a firearm at the Sinkfield Plaintiffs including a minor child;

   g. Knelling on Mr. and Mrs. Sinkfield's body; and

   h. Arresting Mr. and Mrs. Sinkfield without the requisite probable cause.

109. The Police Officer Defendants pointed their firearms at the Sinkfield Plaintiffs, including pointing a gun directly at the head of a minor child.

110. The Police Officer Defendants' conduct was intentional or reckless.

111. The Police Officer Defendants knew or should have known that their conduct would cause severe emotional distress to the Sinkfield Plaintiffs, particularly as Mr. and Mrs. Sinkfield are both elderly and M.F. is a minor child.

112. The Police Officer Defendants' conduct caused the Sinkfield Plaintiffs to suffer severe emotional distress.

113. As a direct, proximate, and foreseeable result of the acts and omissions of the Police Officer Defendants' as alleged above, the Sinkfield Plaintiffs suffered mental anguish, damage to their reputation, mental anguish, damage to his reputation, fear, humiliation,

distress, pain and suffering, mental anguish, loss of enjoyment of life, expenses of medical care and treatment, lost wages, and diminished future earning capacity. These injuries and losses are permanent and continuing and the Sinkfield Plaintiffs will suffer such losses in the future.

114.    As a direct and proximate result of the above mentioned Defendants' actions, the Sinkfield Plaintiffs have suffered damages, including but not limited to emotional distress, psychological trauma, and pain and suffering, physical and mental health injuries, financial and emotional damages.

### Count VI: Negligent Infliction of Emotional Distress
### (Against the Police Officer Defendants in their Individual Capacity)

115.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 115as if fully set forth herein.

116.    The Police Officer Defendants engaged in extreme and outrageous conduct, to wit:

   a.   Pushing Mr. and Sinkfield;

   b.   Pushing both Mr. and Sinkfield to the ground;

   c.   Grabbing Mr. and Mrs. Sinkfield;

   d.   Punching Mr. Sinkfield in the head;

   e.   Knocking Mr. and Sinkfield to the ground;

   f.   Pointing a firearm at the Sinkfield Plaintiffs including a minor child;

   g.   Knelling on Mr. and Mrs. Sinkfield's body; and

   h.   Arresting Mr. and Mrs. Sinkfield without the requisite probable cause.

117.    The Police Officer Defendants pointed their firearms at Plaintiffs, including pointing a gun directly at the head of a minor child, after the target of the arrest warrant had already been apprehended and secured.

118.    The Police Officer Defendants' conduct was intentional or reckless.

119.    The Police Officer Defendants knew or should have known that their conduct would cause severe emotional distress to the Sinkfield Plaintiffs, particularly to a minor child having a gun pointed at their head.

120.    The Police Officer Defendants' conduct caused the Sinkfield Plaintiffs to suffer severe emotional distress.

121.    As a direct, proximate, and foreseeable result of the acts and omissions of the Police Officer Defendants' as alleged above, the Sinkfield Plaintiffs suffered mental anguish, damage to their reputation, mental anguish, damage to his reputation, fear, humiliation, distress, pain and suffering, mental anguish, loss of enjoyment of life, expenses of medical care and treatment, lost wages, and diminished future earning capacity. These injuries and losses are permanent and continuing and  the Sinkfield Plaintiffs will suffer such losses in the future.

122.    As a direct and proximate result of the above mentioned Defendants' actions,  the Sinkfield Plaintiffs have suffered damages, including but not limited to emotional distress, psychological trauma, and pain and suffering, physical and mental health injuries, financial and emotional damages.

### Count VII: False Arrest
### (Against Police Officer Defendants in their Individual Capacity)

123.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 123 as if fully set forth herein.

124.    On January 12, 2024 Mr. and Mrs. Sinkfield were detained and arrested, without warrant, by the Police Officer Defendants who were acting in the course and scope of their duties as police officers with the Pensacola Police Department.

125. The arrest deprived Mr. and Mrs. Sinkfield of their freedom and liberty.

126. Their arrests were unlawful, unreasonable, and unwarranted under the circumstances.

127. The Police Officer Defendants' arrest of Mr. and Mrs. Sinkfield was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

128. The State Attorney dismissed the false charges filed by the police against Mr. and Mrs. Sinkfield as described above.

129. As a direct, proximate, and foreseeable result of the acts and omissions of the Police Officer Defendants' as alleged above, the Sinkfield Plaintiffs suffered mental anguish, damage to their reputation, mental anguish, damage to his reputation, fear, humiliation, distress, pain and suffering, mental anguish, loss of enjoyment of life, expenses of medical care and treatment, lost wages, and diminished future earning capacity. These injuries and losses are permanent and continuing and the Sinkfield Plaintiffs will suffer such losses in the future.

130. As a direct and proximate result of the above mentioned Defendants' actions, the Sinkfield Plaintiffs have suffered damages, including but not limited to emotional distress, psychological trauma, and pain and suffering, physical and mental health injuries, financial and emotional damages.

### Count VIII: Civil Rights Claim - Failure to Implement and/or Enforce Policy
### (Against Chief Kristin Brown and the Pensacola Police Department)

131. The Sinkfield Plaintiffs realleges and incorporates all of the allegations contained above in paragraphs 1 through 131 as if fully restated herein.

132. At all relevant times herein, the Defendant Pensacola Police Department acting by and through Defendant Chief Kristin Brown, developed, implemented, enforced,

encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to the Sinkfield Plaintiffs' Constitutional rights which caused the violation of such rights.

133.   The Police Officer Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive the Sinkfield Plaintiffs of their Constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

134.   The Constitutional abuses and violations by Pensacola Police Department, through the actions of the Pensacola Police Department officers, were and are directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by the Pensacola Police Department including the failure: (a) to adequately supervise and train its officers and agents, including the Police Officer Defendants thereby failing to adequately discourage further constitutional violations on the part of its officers; (b) to properly and adequately monitor and discipline its officers, including the Police Officer Defendants; and (c) to adequately and properly investigate citizen complaints of police misconduct, and, instead, acts of misconduct were tolerated by the Pensacola Police Department.

135.   Upon information and belief, the Pensacola Police Department has, acting through Chief Brown, developed, implemented, enforced, encouraged and sanctioned a de facto policy, practice, and/or custom of unlawfully interfering with, detaining, and/or arresting individuals without reasonable suspicion or probable cause and with excessive force.

136.   Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

137.    Defendants have acted with deliberate indifference to the constitutional rights of the Sinkfield Plaintiffs.

138.    As a direct, proximate, and foreseeable result of the acts and omissions of the Defendants as alleged above, the Sinkfield Plaintiffs suffered mental anguish, damage to their reputation, mental anguish, damage to his reputation, fear, humiliation, distress, pain and suffering, mental anguish, loss of enjoyment of life, expenses of medical care and treatment, lost wages, and diminished future earning capacity. These injuries and losses are permanent and continuing and  the Sinkfield Plaintiffs will suffer such losses in the future.

139.    As a direct and proximate result of the above mentioned Defendants' actions,  the Sinkfield Plaintiffs have suffered damages, including but not limited to emotional distress, psychological trauma, and pain and suffering, physical and mental health injuries, financial and emotional damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and grant the following relief:

1.  Compensatory damages in an amount in excess of $75,000 to be determined at trial for physical injuries, emotional distress, psychological trauma, and other injuries suffered by Plaintiffs;

2.  Punitive damages against the Defendants in an amount to be determined at trial;

3.  An injunction requiring the City of Pensacola and the Pensacola Police Department to implement or revise policies, training, and supervision regarding the use of force,

particularly against minors and during the execution of arrest warrants and other police policies regarding arrests;

4. Reasonable attorneys' fees and costs pursuant to 42 USCS § 1988;

5. Pre-judgment and post-judgment interest as allowed by law; and

6. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED this 12th day of January 2026.

Respectfully Submitted,

Elizabeth Paige White*
EPW Law, PLLC
1601 Connecticut Avenue NW
7th Floor
Washington, D.C. 20009
Email: paige@epwlawpllc.com
202-938-0363